[No. 9733–4–I.   Division One.   September 12, 1983.]

THEODORE DANIELS, ET AL, *Respondents,* v. ELAINE
R. WARD, ET AL, *Appellants,* RAINIER
NATIONAL BANK, *Respondent.*

*Joseph Mijich* and *John P. World,* for appellants.

*A. Kyle Johnson, Anthony Gewald,* and *Dean Messmer,* for respondents Daniels, et al.

*Graham & Dunn* and *Robert A. Medved,* for respondent Rainier National Bank.

SWANSON, J.—This dispute involves an unlawful detainer action. The trial court granted the landlord, DMN Investments, a writ of restitution and damages. Tenants Elaine R. Ward, Eric Forsythe and Cathy Forsythe appeal, presenting arguments that raise three sets of issues: (1) were the proper defendants[1] before the court; (2) did the defendants breach the lease; and (3) did the trial court properly determine the amount of damages and attorneys' fees?

On December 23, 1977, Ward and the Forsythes, as tenants, and DMN Investments, a general partnership, as landlord, executed a lease for the rental of portions of the Duncan Building in Seattle for use as a restaurant. The lease called for payment of a gradually increasing basic minimum rent or 5¼ percent of the gross receipts if greater than the minimum. The next day, on December 24, 1977, in accordance with the lease, Ward and the Forsythes assigned

---

[1] The designation "defendants" throughout this opinion refers only to Ward and the Forsythes, and not to Rainier National Bank. The trial court's determinations pertaining to Rainier were not challenged.

the lease[2] in writing to 13 Coins, Inc., a corporation virtually entirely owned by Ward, without informing DMN. In November 1979, Ward and the Forsythes as individuals and DMN signed a modification to the lease making changes not pertinent here and ratifying the remainder of the lease. In December 1979, a limited partnership called Lafitte's Ltd. was formed. The general partners were 13 Coins and El Gaucho, a corporation wholly owned by Ward. There were seven limited partners including the Forsythes. The defendants at trial claimed 13 Coins orally assigned the lease to Lafitte's Ltd. The trial court found that DMN had no knowledge of any lease assignment to 13 Coins or Lafitte's Ltd.

Lafitte's Restaurant was opened on the leased premises in December 1979. In accordance with the lease, DMN received 5¼ percent of the gross receipts for a number of months. In February 1980, Ward and the Forsythes, with DMN's consent, assigned the lease as security to Rainier National Bank. No mention of 13 Coins or Lafitte's Ltd. was made in the assignment.

In May 1981, the restaurant closed. DMN soon served unlawful detainer notices upon Ward and the Forsythes for violating two lease provisions. DMN brought the action alleging the lease required the defendants to operate a restaurant and to discharge mechanic's liens which had been filed. Defendants, continuing to pay the basic minimum

---

[2]The lease contained a provision limiting assignment. It provided in relevant part:

"Tenant shall not assign, . . . this lease . . . without the prior written consent of the Landlord, in each instance. Tenant may assign this lease or sublet the Premises without Landlord's prior written consent to a corporation if at least fifty–one per cent (51%) of the issued and outstanding voting capital stock is at all times owned, and controlled directly or indirectly by Tenant, or Tenant's children and their spouses, and the corporation has paid in capital of not less than $50,000. No assignment or subletting shall relieve or release Tenant of its obligations under this lease unless the following conditions are met:

"(1) The net worth of the assignee corporation is at all times not less than $150,000 computed by generally accepted accounting practices; and

"(2) The assignee corporation has paid percentage rent for at least three (3) years."

rent, claimed they did not violate the lease provisions, and that they were not proper parties to an unlawful detainer action.

The trial court granted a writ of restitution and entered a judgment in favor of DMN for doubled damages of $21,000 in back rent and $2,226 in unpaid utility bills. The trial court also found defendants owed DMN over $33,000 in attorneys' fees, doubled to over $66,000.

Initially, Ward and the Forsythes claim necessary parties, as required by the unlawful detainer statute, were not before the trial court and therefore the trial court was without jurisdiction. They argue that under RCW 59.12.060 Lafitte's Ltd. or 13 Coins was a necessary defendant to an unlawful detainer action. RCW 59.12.060 provides in part:

> No person other than the tenant of the premises, and subtenant, if there be one, in the actual occupation of the premises when the complaint is filed, need be made parties defendant in any proceeding under this chapter . . .

The defendants contend that the statute requires that subtenants in actual possession must be made defendants in unlawful detainer actions. Because Lafitte's Ltd., or alternatively 13 Coins, was a subtenant in actual possession, they argue, it was a necessary party, and, therefore, because it was not joined as a defendant, the trial court did not have jurisdiction to litigate the controversy.

■ We conclude neither Lafitte's Ltd. nor 13 Coins was a necessary defendant to this action. RCW 59.12.060 has not been interpreted as requiring both tenant and subtenant in possession as party defendants. *See Erz v. Reese,* 157 Wash. 32, 38–39, 288 P. 255 (1930). Further, as the trial court concluded, Lafitte's Ltd. was not a separate entity as a subtenant in possession but at most an agent of Ward and the Forsythes. The trial court found Lafitte's Ltd. was not assigned any interest in the premises and was not a party to any lease document. Lafitte's Ltd. was not a necessary party to the action.

■ Moreover, we agree with the trial court's conclusion that Ward and the Forsythes were estopped from asserting

that 13 Coins or Lafitte's Ltd. had any interest in the premises for the purpose of preventing DMN from maintaining an unlawful detainer action against Ward and the Forsythes. The elements of equitable estoppel are well established.

> Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

*Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980).

Applying this test to the facts in this case, the trial court correctly concluded that the defendants were estopped from claiming they assigned the lease to 13 Coins or Lafitte's Ltd. Each element of the test was met. First, there was evidence of acts by the defendants inconsistent with what was later asserted. The trial court found:

> The defendants, Elaine R. Ward, Eric Forsythe and Cathy Forsythe, have at all times acted as tenants under the Lease with plaintiff, at all times relevant hereto, have executed the original Lease and all modifications thereto, and have given written notices and letters to plaintiff that would cause plaintiff as landlord to reasonably believe that the named defendants were in possession as tenants under the Lease.

Yet, at trial defendants claimed that 13 Coins and Lafitte's Ltd. were the tenants. Second, in reliance upon defendants' acts DMN served the unlawful detainer notices on defendants. Third, to allow the defendants to repudiate their prior manifestations would injure DMN by depriving it of the remedies provided under the unlawful detainer statutes. The trial court correctly concluded that the defendants should be estopped from using any lease assignment to 13 Coins or Lafitte's Ltd. to relieve them of liability in the unlawful detainer action.

Defendants also contend because they were not in possession of the premises due to the assignment of the lease and because unlawful detainer proceedings are limited to

defendants in possession, they were not the proper parties to the action. We disagree.

■ A party need not directly possess the premises to be subject to unlawful detainer proceedings. The statute defining unlawful detainer makes clear that a tenant may be guilty of unlawful detainer without directly possessing the premises. RCW 59.12.030(3) states a tenant "is guilty of unlawful detainer . . . [w]hen he continues in possession in person *or by subtenant*" after a breach of the lease. (Italics ours.) We see no reason to distinguish between the situation where the tenant assigns the lease as opposed to subleasing. As stated by our Supreme Court in a similar context, "the word 'subtenant' here means any person holding under authority of a tenant." *Gazzam v. Young,* 114 Wash. 66, 71, 194 P. 810 (1921).

We conclude that a tenant who assigns a lease may still be subject to unlawful detainer proceedings.

Furthermore, we believe principles of estoppel as previously discussed apply to bar Ward and the Forsythes from asserting that the assignment to 13 Coins or Lafitte's Ltd. prevents DMN from maintaining an unlawful detainer action.

Next, defendants claim the trial court erred in concluding that they breached the lease. RCW 59.12.030(4) states that a tenant is guilty of unlawful detainer when he fails to perform any condition or covenant of the lease. DMN complained and the trial court found that defendants breached two provisions of the lease, the provision requiring use of the premises as a restaurant and the provision requiring defendants to discharge all liens upon the premises.

■ We first address the question of whether defendants breached the lease by closing the restaurant. Lease provisions requiring the tenant to occupy or use the premises in a specified manner are enforceable. *Capps v. Western Talc Co.,* 114 Wash. 94, 194 P. 554 (1921); Stoebuck, *The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 291, 338 (1974). "Landlords will especially desire such protection when rent is expressed wholly or partly as a

percentage of the tenant's business income, making the landlord dependent for his rent upon the tenant's successful conduct of the business." Stoebuck, at 338.

Paragraph 5a. of the lease here provided in relevant part:

Tenant shall use and occupy the Premises as a full service restaurant and cocktail lounge providing full dining services to the general public, using the mezzanine for additional dining and cocktail services and using the basement as a wine cellar and conference room having access to dining and cocktail services, all as appears on the floor plan attached hereto as Exhibit "B". . . . It is Tenant's intent during the lease term and any extensions thereof to occupy and use the entire Premises for the use specified herein and to carry on its business continuously each day during customary business hours that similar businesses are open to the public in King County, Washington, so that Landlord may receive the maximum amount of percentage rent from the Premises. Tenant shall not use or occupy the Premises for any other purpose without the prior written consent of Landlord.

The provision, here, required the tenant to occupy and use the premises as a restaurant. In addition, the lease provided that DMN's rent was partially based on defendants' business income. Defendants' failure to comply with the provision constitutes a breach. Thus, defendants were guilty of unlawful detainer under RCW 59.12.030(4).

DMN also complained and the trial court concluded that defendants' failure to discharge mechanic's liens constituted a breach of the lease. Paragraph 8d. of the lease provided:

Any mechanic's lien filed against the Premises or the Building or the land upon which the Building is located for work done or for materials furnished to or contracted for by Tenant shall be discharged by Tenant within ten (10) days thereafter at Tenant's expense. If Tenant fails to so discharge any such lien, Landlord may do so at Tenant's expense, and the amount expended by Landlord in so doing, together with all expenses, including attorney's fees incurred by Landlord in connection therewith, shall be paid by Tenant within ten (10) days after rendition of a bill therefor to Tenant.

Ward and the Forsythes argue that the lease provision was intended to apply only to "valid" liens, that the liens here were invalid, and consequently they were not required to discharge the liens.

The trial court's conclusion that defendants were obligated to discharge all liens seems reasonable. The provision states "any" lien must be discharged. The requirement that liens must be discharged within 10 days indicates all liens must be discharged because it is unlikely a lien's validity could be litigated within 10 days. In addition, this interpretation is persuasive because, as DMN suggests, the provision is designed to protect the landlord and a lien need not be valid to damage the landlord. We are convinced that the provision is most reasonably interpreted as requiring the tenant to discharge all liens. The trial court correctly concluded that defendants were guilty of unlawful detainer because they breached provisions of the lease.

The final issues before us concern the amount of damages awarded and attorneys' fees. Defendants claim the trial court erred by admitting evidence on unpaid utility bills, resulting in an award of over $1,100 in damages, doubled. The lease obligated the defendants to pay certain utility charges. They claim DMN failed to establish the amount of those charges except through inadmissible hearsay evidence.

We agree that the evidence presented was inadmissible. Here the evidence presented to establish damages for unpaid utility bills consisted only of DMN partner Robert Miller's testimony that he called the light and water departments to determine that the unpaid bills totaled $1,103. ER 802 explicitly states hearsay is inadmissible except as provided by rule or statute. There is no exception pertaining to testimony such as Miller's. RCW 5.45 provides a method for admitting business records, but that was not followed here. The trial court erred by admitting the evidence. Because the evidence was inadmissible and no other evidence on the amount of utility charges was presented, the judgment is reduced by the total amount

allowed for unpaid utility bills.

Defendants also challenge the amount awarded as attorneys' fees. Paragraph 19b. of the lease provides for award of attorneys' fees to the prevailing party in any action for possession. The provision states that in an action for possession the prevailing party is entitled to reasonable attorneys' fees "of such action or proceeding . . ." The trial court awarded DMN attorneys' fees totaling over $33,000.

A determination of whether attorneys' fees are reasonable must be determined in light of the circumstances of each case. *In re Renton,* 79 Wn.2d 374, 377, 485 P.2d 613 (1971). The trial court has broad discretion in determining the amount of attorneys' fees. *E.g., In re Estate of Novolich,* 7 Wn. App. 495, 503, 500 P.2d 1297 (1972).

The Code of Professional Responsibility provides guidelines for determining reasonable attorneys' fees. *E.g., Kimball v. PUD 1,* 64 Wn.2d 252, 257, 391 P.2d 205 (1964). CPR DR 2–106(B) provides:

> Factors to be considered as guides in determining the reasonableness of a fee include the following:
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent.

Here, the trial court in its oral decision considered many of the factors listed in CPR DR 2–106. The court concluded that the case was "tremendously complex," and that the complexity was caused by "the maneuverings of the

defendants." The court found that the hours and charges were reasonable.

While $6,400 in the fees awarded trial counsel's firm of Lasher and Johnson were reasonable, we believe the $26,696.45 in attorneys' fees awarded the firm of Neubauer and Mussehl were unreasonable. A number of considerations support our determination. First, the total amount of attorneys' fees is nearly three times the total amount of damages awarded. Second, attorney Ronald Neubauer, who billed approximately 80 percent of the amount awarded, was a partner of the plaintiff DMN. As a part owner, he may have worked an unusual number of hours on the case and performed functions of a client, not counsel. Finally, and decisively, it appears that some of Neubauer's services were not directly involved with the litigation, but involved negotiations for the purchase of Lafitte's. Neubauer was candid in his testimony that a substantial number of the hours he billed in this case were spent negotiating the sale and purchase of Lafitte's and the assets of the premises. The relevant lease provision here provides only that attorneys' fees may be recovered for the principal action for possession and damages. The trial court should have awarded attorneys' fees only for time spent on the unlawful detainer action, not related business negotiations. Accordingly, we remand to the trial court to determine the portion of attorneys' fees Neubauer devoted as counsel to preparation and trial in the principal action.

Defendants also contend that the trial court erred by doubling the attorneys' fees awarded to over $66,000. RCW 59.12.170 requires the court in an unlawful detainer action to double the amount of damages including rent due. Paragraph 19c. of the lease states:

> All sums to be paid by Tenant to Landlord under any of the provisions of this lease, in addition to the basic rent provided in paragraph 3 of this lease, are hereby agreed to be additional rent due from Tenant to Landlord. With respect to such additional rent and collection thereof and damages accruing to Landlord by reason of

the non–payment hereof, Landlord shall have all the powers, discretions, rights and remedies as are provided in this lease, or as allowed by law, to the same extent and for all intents and purposes as if such additional rent constituted a part of the basic rent.

The trial court decided that the attorneys' fees should be considered rent under the lease and therefore must be doubled under the statute.

Two questions are determinative of this issue. First, we must decide whether the lease provision contemplates characterizing attorneys' fees as rent. Second, we must decide whether RCW 59.12.170 permits parties to define attorneys' fees as rent for the purpose of obtaining double damages. We answer both questions negatively and reverse the trial court's decision insofar as it doubles the amount of attorneys' fees awarded.

We do not believe that the lease provision requires characterizing attorneys' fees as rent. The phrase in the lease "[a]ll sums to be paid by Tenant to Landlord under any of the provisions of this lease, in addition to the basic rent" applies to only payments from *tenant to the landlord* arising directly out of rental of the premises, for example, the percentage rent. It does not apply to payments that effectively are payments from tenant to landlord's attorneys. Even DMN in its brief recognizes that the parties probably did not contemplate defining attorneys' fees as rent.

Moreover, even assuming that the parties actually entered into an agreement defining attorneys' fees as rent, we do not believe that the unlawful detainer statute permits doubling of attorneys' fees under such an agreement. RCW 59.12.170 does not refer to attorneys' fees. In addition, the doubling of attorneys' fees would do little to achieve the objectives of the provision. RCW 59.12.170 was designed to deter tenants from retaining possession of premises unlawfully and to ensure that landlords are fully compensated. While the doubling of attorneys' fees may in part serve the former objective, it in no way serves the latter. The doubling of attorneys' fees primarily serves to give

landlord's attorneys a windfall. RCW 59.12.170 does not permit such a result.

Finally, DMN requests attorneys' fees on appeal. The lease provision authorizing attorneys' fees states that they should be awarded to the prevailing party to this lease in any proceeding. Because both parties partially prevailed on this appeal, we deny the request for attorneys' fees on appeal.

We affirm in part, reverse in part, and remand for a determination of attorneys' fees.

DURHAM, A.C.J., and SCHOLFIELD, J., concur.